UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RUSTIN D. JOHNSON

VERSUS

MECO ENVIRONMENTAL, LLC

CIVIL ACTION

NO. 09-1064-JJB-DLD

*****CONSOLIDATED WITH*****

MECO ENVIRONMENTAL, LLC

VERSUS

RUSTIN D. JOHNSON, ET AL

CIVIL ACTION

NO. 10-231-JVP-DLD

## RULING ON DERRICKSON'S AND LANGGLE'S MOTIONS FOR NO RIGHT OF ACTION AND LANGGLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Ray Derrickson's Motion (doc. 63) to Dismiss for No Right of Action and Sherry Ann Langgle's Motions (docs. 60 and 61, respectively) to Dismiss for No Right of Action and for Partial Summary Judgment. MECO Environmental, LLC has filed oppositions (docs. 67, 68 & 69) to Derrickson's and Langgle's motions. Langgle has filed replies to MECO's oppositions (docs. 71 & 72). Oral argument is not necessary. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

### Background

I. Facts

   A. Facts pertinent to Langgle's Motion for Partial Summary Judgment

1

The following facts are undisputed. On February 27, 2009, Rustin Johnson ("Johnson"), the sole shareholder in Industrial Cleanup, Inc. ("ICI"), sold his ICI shares to MECO Environmental, LLC ("MECO") for over $7.5 million (doc. 61, ex. A-P-3). Under the Stock Purchase Agreement ("the Purchase Agreement"), MECO paid Johnson $1 million at the time of the closing and canceled his $582,953 debt to ICI (*Id.*, ex. A-P-3). In addition, Section 2.2(d) of the Purchase Agreement required MECO to pay Johnson one-half of any receivable payment from Shaw Group, Inc. ("Shaw"), which had an outstanding debt to ICI of over $5 million (*Id.*, ex. A-P-3). And according to Section 7.2 of the Purchase Agreement, if MECO failed to make such a payment within twenty days of receiving written notice of its breach, MECO could be placed in default (*Id.*, ex. A-P-3).

MECO also provided Johnson with a $6-million promissory note ("the Note") to cover the balance under the Purchase Agreement and a security agreement which pledged collateral to secure the note (*Id.*, exs. A-P-1 & A-P-2). The Note required MECO to make $1-million payments to Johnson annually until MECO's debt extinguished (*Id.*, ex. A-P-1).

In October and December 2009, ICI received payments from Shaw in the amount of $266,000 and $1,622,000 but failed to pay Johnson half of the payments as required by the Purchase Agreement. On both occasions, Johnson's counsel notified MECO that it had breached the Purchase Agreement and urged them to comply (*Id.*, exs. A-P-4 & A-P-5). Moreover, in February

2010, MECO failed to make an annual $1-million payment as required by the Promissory Note. On March 8, Johnson's counsel demanded payment and notified MECO that its failure to comply within twenty days would constitute a default (*Id.*, ex. A-P-6).

### B. Allegations pertinent to Derrickson's and Langgle's Motions to Dismiss

Prior to MECO's purchase of ICI, Johnson and ICI's then-President Raymond F. Derrickson ("Derrickson") made a number of claims about ICI's financial health, which allegedly turned out to be false (doc. 1). For instance, Johnson and Derrickson allegedly overstated ICI's accounts receivable and dramatically understated its liabilities, and claimed that ICI owned equipment which it did not, or misrepresented the condition of the equipment. MECO alleges that, as a result, it was unable to obtain a line of credit and had to divert resources from other more profitable projects and has suffered over $3.5 million in losses.

In addition, prior to the sale, Johnson and Derrickson agreed to work for SEMS, Inc. ("SEMS"), an ICI competitor, despite that Johnson had signed a non-compete agreement. In addition to working for SEMS, Johnson and Derrickson allegedly recruited many of ICI's customers and employees, diverted many of ICI's business opportunities to SEMS, and hid or converted ICI's equipment, all in an effort to "cripple MECO" (docs. 1 & 49).

### II. Procedural History

3

### A. Johnson's action

On December 18, 2009, Johnson filed suit against MECO (doc. 1). Johnson asserts that MECO breached the Purchase Agreement and Note by (1) failing to account to Johnson half of the Shaw payments; and (2) failing to make a $1-million annual payment. Johnson seeks an accounting for the payments and for MECO to be placed in default which would entitle Johnson to immediate payment of the remaining balance of the Note and the collateral pledged to secure the Note. After filing suit, Johnson passed away, and the executrix of his estate, Sherry Ann Langgle ("Langgle") was substituted (doc. 25). On February 9, 2011, Langgle filed her Motion (doc. 61) for Partial Summary Judgment as to MECO's aforementioned breaches.

On March 18, 2011, MECO filed its opposition (doc. 68). MECO asserts that it is entitled to (1) recoupment, (2) compensation, and/or a (3) set-off due to Johnson's and Derrickson's violations of the Stock Purchase Agreement. As such, MECO asserts that there are genuine issues of material fact relating to Johnson's entitlements under the Purchase Agreement which preclude summary judgment.

### B. MECO's action

On December 9, 2009, MECO filed suit against Johnson (doc. 1). MECO's claims against Johnson include (1) intentional and negligent misrepresentation; (2) breach of contract; (3) breach of fiduciary duty; and (4) promissory estoppel;

4

(5) unfair trade practices; (6) conspiracy to convert ICI's customers, employees and equipment; (7) breach of confidentiality; and (8) fraud (doc. 1)

On February 9 and February 22, 2011, Langgle (doc. 60) and Derrickson (doc. 63) filed Motions for No Right of Action. Both parties assert that MECO's breaches of fiduciary duty and confidentiality, unfair trade practices, conspiracy, and fraud claims must be dismissed because ICI—the corporation injured by Johnson's and Derrickson's alleged misconduct—must enforce these claims rather than MECO—ICI's shareholder.

On March 14 and 18, 2011, MECO filed oppositions (docs. 67 & 69) to Langgle's and Derrickson's motions to dismiss, respectively. MECO asserts that it has sustained damages independent of those sustained by ICI because Johnson and Derrickson allegedly caused MECO to purchase ICI at an inflated price and MECO has suffered financial losses in an effort to resuscitate ICI. On April 4, 2011, Langgle filed a reply (doc. 71). Langgle urges that any financial harm to MECO occurred solely as a result of ICI's decline in value, and that only ICI can file suit in such circumstances.

## Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6) a federal district court should dismiss the plaintiff's complaint if it "fails to state a claim upon which relief can be granted." To state a valid claim for relief, plaintiff's complaint must contain sufficient factual allegations that, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2009). That is, a plaintiff cannot rely on conclusory allegations or recitations of the elements of an offense to survive a motion to dismiss. *Id.*

A court may grant a motion for summary judgment if the evidence establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. If the movant carries its burden, the non-movant must then demonstrate the existence of a genuine issue of material fact in order to survive the motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## Discussion

### I. Motion to dismiss MECO's claims

Langgle and Derrickson assert that many of MECO's claims for relief must be dismissed because ICI—the corporation injured by Johnson's and Derrickson's alleged misconduct—must enforce these claims rather than MECO—ICI's shareholder (docs. 60 & 63). Langgle and Derrickson assert that the following claims must be dismissed: (1) claim three for breach of fiduciary duty; (2) claim four for conspiracy to convert ICI's customers, employees and equipment; (3) claim six for violation of the Louisiana Unfair Trade Practices Act through the aforementioned conversions; (4) claim seven for breach of confidentiality in disclosing ICI's confidential information; and (5) claim eight for civil fraud for the items taken from ICI.

In opposition, MECO asserts that it may assert the aforementioned claims against Johnson and Derrickson because it has sustained damages independent of those sustained by ICI (docs. 67 & 69). MECO asserts that Johnson and Derrickson sought to overhype the value of ICI prior to the sale and destroy the value of ICI after the sale in order to force MECO to transfer the stock back to Johnson and Derrickson at a dramatically reduced price. As a result MECO has had to expend and divert significant resources in an effort to make ICI financially viable.

In reply, Langgle asserts that any loss suffered by MECO relates solely to ICI's financial health derives solely from its status as an ICI stockholder (doc. 71). Langgle asserts that only ICI—and not MECO, its shareholder—may maintain a suit against Johnson in such circumstances.

Generally speaking, when a shareholder suffers a loss due to the alleged mismanagement of or breach of a duty to the corporation by its officers, the shareholder may not individually file suit against the corporation or the allegedly culpable officers. *Palowsky v. Premier Bancorp, Inc.*, 597 So. 2d 543, 545 (La. Ct. App. 1st Cir. 1992). Instead, the shareholder must first attempt to persuade the corporation to bring suit against the officers under Louisiana Code of Civil Procedure art. 596. However, where the shareholder suffers an injury that is independent from the corporation or shareholders as a group, the shareholder may have a right to sue individually. *Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1154 (La. Ct. App. 4th Cir. 2001). However, where the

shareholder's injury is simply financial loss due to the diminished value of the corporation, the shareholder may not individually file suit against the corporation. *Id.* This is so even where the aggrieved shareholder owns all of the stock in the corporation. *Red Simpson, Inc. v. Lewis*, 583 So. 2d 918, 921 (La. Ct. App. 1st Cir. 1991).

The Court finds that MECO has not stated a claim upon which relief can be granted as to claims three, four, six, seven and eight. Officers owe fiduciary duties and duties of confidentiality to shareholders only in their capacities as shareholders. *See, e.g., Palowsky*, 597 So. 2d at 545. As such, claims three (breach of fiduciary duty) and seven (breach of confidentiality) must be dismissed. *Id.* Claims four (conspiracy), six (unfair trade practices) and eight (fraud) must also be dismissed. MECO asserts that Johnson and Derrickson engaged in a conspiracy, unfair trade practices and fraud in converting ICI's customers, employees and equipment to SEMS, must also be dismissed. Plainly, ICI—the corporation from which the customers, employees and equipment were converted—is the injured party. If MECO suffered any injury from the conversion, it is the resultant diminution in ICI's value and not any direct loss to MECO itself. As such, claims four (conspiracy), six (unfair trade practices) and eight (fraud) must be dismissed. *Sun Drilling Prods.*, 798 So. 2d at 1154.

**II. Partial summary judgment of Johnson's claims**

Langgle asserts that MECO breached the Purchase Agreement and Note by (1) failing to pay Johnson one-half of the payments received from Shaw; and (2) failing to make its annual $1-million payment to Johnson (09-1064, doc. 61). As such, Langgle asserts that MECO is in default and that Johnson may recover the balance remaining on the Note and the collateral pledged to secure it. MECO asserts that it is entitled to claims of (1) recoupment, (2) compensation, and/or a (3) set-off due to Johnson's and Derrickson's misconduct, and that these claims create genuine issues of material fact as to Johnson's alleged entitlements. Meco asserts that summary judgment, therefore, is not appropriate.

The right to of a obligee to enforce a promissory note is subject to "a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument." La. R.S. § 10:3-305. For instance, recoupment is a defense to the enforcement of a promissory note due to the note-holder's failure to render the "performance that was the consideration for the note." La. R.S. § 10:3-305 (committee notes).

The Court finds that there are genuine issues of material fact. In purchasing ICI, MECO agreed to make annual $1-million payments to Johnson in the Purchase Agreement and to render to Johnson one-half of any payments received from Shaw in the Note (doc. 61, ex. A-P-1 & A-P-3). In 2009, ICI received payments from Shaw but MECO failed to pay Johnson his one-half and on both occasions, MECO was notified of its failure (*Id.*, exs. A-P-4 & A-P-5).

However, in negotiating the sale of ICI, Johnson and Derrickson allegedly made a number of misrepresentations to MECO about ICI's financial health (doc. 68, ex. D). Whether or not (1) Johnson and Derrickson misrepresented ICI's financial situation; (2) these statements are implicated by warranty provisions in the relevant contracts; and (3) whether the execution of the promissory note was part of the same transaction in which the misrepresentations were made are in issue. Therefore, Johnson's entitlement to the balance of the Note and the collateral pledged to secure it is in issue. As such, summary judgment is not appropriate.

## CONCLUSION

Accordingly, the Court hereby GRANTS Langgle's and Derrickson's Motions (docs. 60 & 63, respectively) to Dismiss for No Right of Action as to MECO's claims for relief three (breach of fiduciary duty), four (conspiracy), six (unfair trade practices), seven (breach of confidentiality) and eight (fraud). The Court also hereby DENIES Langgle's Motion (doc. 61) for Partial Summary Judgment.

Signed in Baton Rouge, Louisiana this 14th day of August, 2010.

JUDGE JAMES. J. BRADY
MIDDLE DISTRICT OF LOUISIANA